E-Filed: 12/31/12

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEVORK GRIGORYAN, an individual,

              Plaintiff,

       vs.

BANK OF AMERICA CORPORATION
/aka/ BAC HOME LOANS, a Delaware
corporation,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. ED CV 12-01219 MMM (PLAx)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS

     On February 15, 2012, Gevork Grigoryan filed this action in the Central District of California against defendant Bank of America Corporation ("BofA"), also known as BAC Home Loans.[1] On June 7, 2012, he filed a first amended complaint.[2] On June 29, 2012, BofA moved

---

[1]Complaint, Docket No. 4 (Feb. 15, 2012) at 1.

[2]First Amended Complaint ("FAC"), Docket No. 14 (June 7, 2012) at 1.

1   to dismiss the first amended complaint.[3]  Grigoryan opposes the motion.[4]

2

3                    **I.  FACTUAL BACKGROUND**

4        Plaintiff Gevork Grigoryan is the borrower on a mortgage loan ("Account #1") and a

5   equity line of credit ("Account #2") obtained from BofA.[5]  BofA is the creditor on both loans.[6]

6   Grigoryan alleges that, on February 2010, while reviewing his credit history, he learned that BofA

7   had reported inaccurate and unjust delinquency claims on the loans.  Specifically, he alleges that

8   BofA inaccurately reported late payments for the months of December 2009 and January 2010 on

9   account #1.[7]  Immediately upon discovering the purported inaccuracy, plaintiff contacted the

10  national credit reporting agencies ("CRAs") to dispute the alleged late payments.[8]  On March 1,

11  2010, Grigoryan contacted BofA directly, disputing the report.  Grigoryan purportedly attached

12  to his letter proof of timely payments and receipts for the months that were purportedly

13  delinquent.[9] He alleges that BofA failed properly and timely to correct the errors in his account.[10]

14       On March 12, 2010, BofA answered Grigoryan's letter, allegedly stating that it had not

15  been provided the information necessary to conduct an investigation.  Grigoryan alleges that BofA

16  in fact had the information necessary to investigate, and also to correct, the disputed

17

18

19

20       [3]Motion to Dismiss ("Motion"), Docket No. 21 (June 29, 2012). See also Reply in Support
    of Motion to Dismiss Case ("Reply"), Docket No. 29 (August 6, 2012).

21

22       [4]Opposition to Motion to Dismiss Case ("Opp."), Docket No. 27 (July 30, 2012).

23       [5]FAC, ¶ 14.

24       [6]*Id.*, ¶ 16.

25       [7]*Id.*, ¶ 19.

26       [8]*Id.*, ¶ 20.

27       [9]*Id.*, ¶ 21.

28       [10]*Id.*, ¶ 23.

1  delinquencies.[11] Rather than correct the error, BofA allegedly proceeded to verify to the CRAs
2  that the late payments of December 2009 and January 2010 were accurate.  An April 20, 2010
3  credit report from BofA purportedly reflected the inaccurate late payments and included new false
4  claims of delinquencies for February and March 2010.[12]

5        On March 24, 2010, upon receipt of BofA's March 12, 2010 letter, Grigoryan demanded
6  that it promptly delete the inaccurate late payment reports.  He noted that his earlier
7  correspondence had included all information necessary for BofA to investigate the reporting error.
8  Grigoryan included copies of his March 1, 2010 letter as well as proof of timely payment.[13]

9        BofA replied on April 29, 2010, stating that Grigoryan's credit correction request had been
10 approved.  Grigoryan forwarded copies of this letter to the CRAs with a request for faster
11 processing of the credit update.  On July 22, 2010, Grigoryan learned that the late reports of
12 December 2009 and January 2010 had been deleted.  He alleges that BofA, however, had made
13 a new inaccurate payment report for June 2010.[14]

14       On July 23, 2010, Grigoryan sent a letter of dispute and complaint to BofA regarding the
15 new late payment report.  He enclosed proof of payments for the months of June and July 2010.
16 On August 5, 2010, BofA sent plaintiff an automated response letter stating that Grigoryan's claim
17 did not refer to particular entries on his credit report.  Before Grigoryan could respond, however,
18 BofA removed the inaccurate report of a late payment for June 2010 from the credit reports.[15]

19       Grigoryan alleges that during the months that BofA reported inaccurate information to the
20 credit reporting agencies concerning account #1, his credit rating dropped, causing reductions in
21 his credit limits, termination of existing personal and business accounts, and denials of new

22

23       [11]*Id.*, ¶ 24.

24       [12]*Id.*, ¶ 25.

25       [13]*Id.*, ¶ 26.

26       [14]*Id.*, ¶¶ 28-31.

27       [15]*Id.*, ¶¶ 33-35.

28

1   financing.[16]  Additionally, following BofA's first inaccurate delinquency report in December 2009,

2   Grigoryan's home equity line of credit from Citibank was suspended and his request for

3   refinancing denied.   Grigoryan alleges he was told that the denial was the result of the late

4   payment report by BofA.   He alleges that the refinancing he sought would have reduced his

5   monthly loan payments by approximately $1,200-1,300, and that he would have saved this amount

6   monthly for the past two years.[17]

7       In October 2011, Grigoryan reviewed his credit reports and noticed that BofA had once

8   again reported inaccurate credit information.   Specifically, BofA had reported a late payment in

9   September 2011 on account #2.   Grigoryan immediately disputed the inaccuracy.[18]   Sometime

10   later, he contacted BofA regarding the mistake.   BofA allegedly advised that the late payment had

11   not occurred in September 2011, but in another, unidentified month.   Grigoryan said he would

12   produce proof of timely payments if BofA told him the month in which he was allegedly

13   delinquent.   BofA allegedly refused to cooperate, however, and dismissed his requests.[19]

14       On October 21, 2011, Grigoryan sent BofA a Qualified Written Request ("QWR") under

15   the Real Estate Settlement Procedures Act ("RESPA"), and also disputed how account #2 was

16   reflected on his current credit reports.   Grigoryan alleges that he submitted the proper

17   documentation required for a QWR.   BofA purportedly failed to cease reporting account #2 as

18   delinquent to the CRAs, as it was obligated to under RESPA and the Fair Credit Reporting Acts

19   ("FCRA").   It also allegedly did not acknowledge receipt of or respond to the QWR.[20]   Grigoryan

20   asserts that under RESPA, BofA was required formally to acknowledge receipt of the QWR within

21

22      [16]*Id.*, ¶ 36; see also *id.*, Exh. L (examples of letters from creditors of plaintiff, informing

23   him of credit line reductions, termination of personal and business credit accounts, and rejections

24   of applications for credit and/or credit line increases).

25      [17]*Id.*, ¶ 38.

26      [18]*Id.*, ¶¶ 43-44.

27      [19]*Id.*, ¶ 45.

28      [20]*Id.*, ¶¶ 46-47.

1    twenty days.[21]  Instead, it purportedly verified the inaccurate late payment to the CRAs.[22]

2          On November 16, 2011, Grigoryan received a letter from BofA stating that it would not

3    change any information it had previously reported.  BofA contended that all information reported

4    was accurate.  It did not provide proof of this, however, or any documentation responsive to the

5    QWR.[23]  On December 15, 2011, Grigoryan sent a follow-up letter to BofA regarding his request

6    for credit correction.  Although he received a certified mail receipt confirming delivery of the

7    letter on December 19, 2011, BofA never replied.[24]

8          On January 10, 2012, Grigoryan sent a letter requesting BofA's cooperation in resolving

9    the matter amicably, specifically by the prompt correction of its account reporting to the CRAs.

10   BofA failed to respond, despite having received the letter on January 11, 2012.[25]  BofA ultimately

11   removed the inaccurate September 2011 late payment information for account #2 after Grigoryan

12   spoke to a supervisor in BofA's Credit Reporting Department on May 23, 2012.  She purportedly

13   confirmed that every payment Grigoryan had made on his BofA accounts had been timely.[26]

14   Grigoryan alleges, however, that following this conversation, no one in BofA's legal department

15   nor any of its attorneys communicated with him in an effort to resolve the legal aspects of the

16   matter.[27] He alleges that BofA's reporting of inaccurate payment information for September 2011

17   caused further damage to his credit, and resulted in the closing of more accounts, reductions in

18   credit lines, rejections of application for credit or credit line increases, and the suspension of his

19

20   _____

21   [21]*Id.*, ¶ 50.

22   [22]*Id.*, ¶ 47.

23   [23]*Id.*, ¶ 49.

24   [24]*Id.*, ¶¶ 51-52.

25   [25]*Id.*, ¶¶ 54-55.

26   [26]*Id.*, ¶ 58.

27   [27]*Id.*, ¶ 59.

28

1    home equity line of credit with Citibank.[28]

2        Grigoryan alleges that by repeatedly failing to take action to remove inaccurate credit

3    information regarding accounts #1 and #2, BofA violated the FCRA, California's Consumer

4    Credit Reporting Agencies Act ("CCCRAA"), and RESPA.[29]  He alleges that as a result, he has

5    suffered serious pecuniary harm, incurred out-of-pocket expenses in the form of time spent

6    communicating with BofA multiple times over two years, and emotional distress, as well as a

7    reduced credit score and creditworthiness, which may result in future inability to obtain credit,

8    employment, and housing.[30]

9        Grigoryan pleads five causes of action: (1) violation of RESPA (12 U.S.C. § 2601 et seq.);

10   (2) violation of the FCRA (15 U.S.C. § 1681 et seq.); (3) violation of the CCCRAA (California

11   Civil Code § 1785); (4) violation of California Business & Professions Code § 17200; and

12   (5) defamation and credit slander.[31]  BofA contends that the complaint fails to state any claims

13   upon which relief can be granted.  FED.R.CIV.PROC. 12(b)(6).

14

15                                    **II.  DISCUSSION**

16   **A.     Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)**

17       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

18   A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal

19   theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*

20   *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual

21   allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences

22   from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38

23

24   _____

25   [28]*Id.*, ¶ 56.

26   [29]*Id.*, ¶¶61-63.

27   [30]*Id.*, ¶ 64.

28   [31]*Id.*, ¶ 1.

                                         6

(9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

**B.     Whether Plaintiff's First Cause of Action States a Claim for Violation of the Real Estate Settlement Procedures Act ("RESPA")**

"Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process.  It sought to increase the supply of information available to mortgage consumers about the cost of home loans in advance of settlement, and to eliminate abusive practices such as kickbacks, referral fees, and unearned fees." *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002).  To that end, 12 U.S.C. § 2605 outlines specific notice requirements for the servicing of mortgage loans and administration of escrow accounts.

A QWR is defined in 12 U.S.C. § 2605(e) as follows:

"For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –

1        (i) includes, or otherwise enables the servicer to identify, the name and account of

2        the borrower; and

3        (ii) includes a statement of the reasons for the belief of the borrower, to the extent

4        applicable, that the account is in error or provides sufficient detail to the servicer

5        regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

6  Upon receipt of a QWR, the servicer of a federally related mortgage loan must provide a written

7  response within twenty business days acknowledging receipt of the correspondence. *Id.*,

8  § 2605(e)(1)(A). Within sixty business days, the servicer must, after conducting an investigation,

9  give the borrower a written explanation or clarification that includes "to the extent applicable, a

10  statement of the reasons . . . the servicer believes the account of the borrower is correct as

11  determined by the servicer," and/or "information requested by the borrower or an explanation of

12  why the information requested is unavailable or cannot be obtained by the servicer." *Id.*,

13  § 2605(e)(2). If warranted, the servicer must "make appropriate corrections in the account of the

14  borrower, including the crediting of any late charges or penalties, and transmit to the borrower

15  a written notification of such correction." *Id.*, § 2605(e)(2)(A).

16        To state a viable claim under § 2605(e), a plaintiff must allege: (1) facts giving rise to an

17  inference that the servicer of a mortgage loan received a QWR, including the identity of the

18  purported recipient, *Olivier v. NDEX West, LLC*, No. 1:09–CV–00099 OWW GSA, 2009 WL

19  2486314, *3 (E.D. Cal. Aug. 12, 2009) (dismissing a claim where plaintiff alleged that a demand

20  for information was sent to a foreclosure agent rather than a loan servicer); *Velazquez v. U.S.*

21  *Bank Nat'l Ass'n*, No. 09-1104, 2009 WL 1941807, *4 (C.D. Cal. July 1, 2009) (holding that

22  plaintiff must indicate "to whom the requests were addressed"); (2) facts showing that the QWR

23  contained information enabling the servicer to identify the name and account of the borrower,

24  *Keen v. Am. Home Mortg. Serv., Inc.*, 664 F.Supp.2d 1086, 1097 (E.D. Cal. 2009) ("A qualified

25  written request is a written correspondence that enables the servicer to identify the name and

26  account of the borrower"); (3) facts revealing that the QWR included a statement as to why

27  plaintiff believed the account was in error or that provided sufficient detail regarding the other

28

1    information he sought, *id.* ("[A QWR] also either includes a statement describing why the

2    borrower believes that the account is in error or provides sufficient detail to the servicer regarding

3    other information sought by the borrower"); (4) facts demonstrating that the QWR addressed the

4    "servicing" of plaintiffs' loan as that term is defined by statute, rather than the validity of the loan

5    or other legal issues, *Champlaie v. BAC Home Loans Serv.*, No. 09-1316, 2009 WL 3429622, *7

6    (E.D. Cal. Oct. 22, 2009) (dismissing without prejudice where plaintiff failed to allege that a

7    purported QWR "requested information related to servicing"); and (5) facts indicating either that

8    plaintiff suffered actual damage as a result of defendant's failure to respond to his inquiries

9    regarding the servicing of the loan or that a pattern or practice of noncompliance exists entitling

10   plaintiff to statutory damages. See *Delino v. Platinum Community Bank*, 628 F.Supp.2d 1226,

11   1231-32 (S.D. Cal. 2009) (describing the elements of a QWR claim).

12          BofA contends that Grigoryan has failed to allege any facts demonstrating that BofA

13   violated RESPA.[32]   It contends that Grigoryan offers only a conclusory allegation that his

14   correspondence was a QWR, and that this is insufficient to establish he sent a *valid* QWR.[33]

15   Because Grigoryan did not attach a copy of the purported QWR to his complaint, the court must

16   rely on the facts alleged to determine whether he has adequately alleged a RESPA claim.[34]

17          Contrary to BofA's contentions, Grigoryan has adequately pled that he sent a valid QWR

18   to the bank.  He alleges that he sent BoFA "a letter containing his name, account/mortgage ID

19   number of the loan in question and a statement of reasons why [he] believed the account [was] in

---

22   [32]Opp. at 3.

23   [33]*Id.* at 4.

24   [34]BofA argues that Grigoryan has failed to show that the QWR exists because he has not
25   attached a copy of it to his complaint.  (Reply at 3.)  Grigoryan represents that he could not attach
     a copy of the QWR because he sent the document to BofA and was unable to obtain a copy.  (Opp.
26   at 7.)  The issue BofA raises is more properly resolved through discovery and in the context of
     a motion for summary judgment.  A plaintiff is not required to adduce evidence to survive a
27   motion to dismiss, and Grigoryan has alleged facts giving rise to a plausible inference that he sent
28   a QWR to BofA.

                                                    9

error."[35]  He specifically alleges that the letter "expressed his concerns regarding . . . how Defendant report[ed] his account to the CRAs . . . with an inaccurate late payment claim for the month of September 2011."  He also asserts that the letter "asked for [the] specific loan documents necessary . . . to verify the accuracy of Defendant's late payment claim for the month of September 2011."[36]  These factual assertions are sufficient to allege that BofA received a QWR that contained information enabling it to identify Grigoryan's name and account, as well as a statement concerning the reasons he believed the account was in error.  See *Keen*, 664 F.Supp.2d at 1097.  The allegations also adequately plead that the QWR addressed the servicing of Grigoryan's loan (specifically, inaccurate reporting of account #2 reflecting a late payment in September 2011), rather than the underlying validity of the loan.[37]

BofA also argues that Grigoryan's allegations are insufficient to raise an inference that it received the QWR.  Grigoryan alleges that on October 21, 2011, he sent a QWR to BofA through an "authorized agent."[38]  He has attached to his complaint, moreover, a letter from BofA, dated November 16, 2011, which appears to be responsive to the concerns Grigoryan purportedly raised in the October 21, 2011 QWR.[39]  Although Grigoryan does not provide a certified mail receipt for the original QWR letter, he provides certified receipts for follow-up letters he sent BofA on

[35]FAC, ¶ 46.

[36]*Id.*

[37]*Id.*

[38]*Id.*  Grigoryan does not identify the agent or define the term "authorized agent."

[39]FAC, Exh. S.  In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  The court can, however, consider documents incorporated in the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In this case, Grigoryan has referenced these documents in the complaint, incorporating them by reference.

December 19, 2011,[40] and January 11, 2012,[41] which list the same Simi Valley address that is included on BofA's correspondence to Grigoryan.  In combination, these facts suffice to raise a reasonable inference that BofA received Grigoryan's QWR.  See *Public Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1197 (9th Cir. 2012) (on a motion to dismiss, the court must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party").  Compare *Gusenkov v. Residential Mortgage Capital, Inc.*, No. CIV 2:10–cv–1421–MCE–JFM, 2010 WL 3127045, *5 (E.D. Cal. Aug. 9, 2010) (concluding that the complaint "fail[ed] to allege facts sufficient for the court to draw a reasonable inference that [defendant] actually received the alleged QWR" where it did  "not contain any facts as to when the QWR was mailed, to whom it was mailed, or the contents of the QWR").

Grigoryan has also satisfied the final element of a § 2605(e) claim by alleging in detail the ways in which he was purportedly damaged by BofA's failure to provide timely and proper responses to him, and make appropriate corrections to his account, in violation of RESPA, §§ 2605(2)(A)-(C).  Grigoryan asserts that he suffered pecuniary injury as a result of his inability to obtain credit cards and consumer loans, his loss of use of existing funds, the denial of his refinancing applications, his loss of credit and loan opportunities, as well as out-of-pocket expenses, emotional distress, and a reduced credit score and creditworthiness.[42]  Grigoryan  has alleged, moreover, that BofA engaged in a pattern of noncompliance by repeatedly failing to respond to the multiple notices and QWRs he sent them in violation of RESPA.[43]    In sum, Grigoryan has adequately alleged each element of a claim under §2205(e).  BofA's motion to dismiss Grigoryan's first cause of action is therefore denied.

---

[40]*Id.*, Exh. T.

[41]*Id.*, Exh. V.

[42]FAC, ¶ 50.

[43]*Id.*, ¶¶ 46-57.

11

C.      Whether Plaintiff's Second Cause of Action States a Claim for Violation of Fair
        Credit Reporting Act ("FCRA")

Plaintiff alleges that BofA willfully and/or negligently failed to comply with the FCRA by (1) failing to follow reasonable procedures to assure the maximum possible accuracy of the information furnished to the CRAs; (2) failing to conduct a proper investigation of disputed information upon receipt of his dispute; (3) failing to delete or permanently block the reporting of inaccurate account information disputed by plaintiff; and (4) failing to take proper action to verify or correct the information disputed by plaintiff.[44]

BofA is a furnisher of information to credit reporting agencies. 15 U.S.C. § 1681s-2(a) outlines various duties with which furnishers of information to CRAs must comply. These duties, which are imposed to ensure the accurate reporting of consumer credit, include a requirement that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). BofA contends that Grigoryan's FCRA cause of action fails because, with the exception of a narrow subset of claims under § 1681s-2(b), the FCRA affords no private right of action.[45] To the extent that Grigoryan's claims are based on violations of § 1681s-2(a), the court agrees that he lacks a private right of action under the FCRA. See 15 U.S.C. § 1681s-2(d) ("The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section [which include the requirements for furnishers under § 1681s-2(a)] . . . shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title"); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies"); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) (same).

Grigoryan's complaint includes allegations that BofA's failure to respond properly to his

---

[44]*Id.*, ¶ 70.

[45]Opp. at 5-6.

dispute of the accuracy of its report to the CRAs violated § 1681s-2(b).  Grigoryan is not barred from asserting a FCRA claim for violation of § 1681s-2(b), as there *is* a private right of action under that subsection. See *Nelson*, 282 F.3d at 1059 (Congress carefully constructed § 1681s-2(b) to allow for a private right of action); see also *Gorman*, 584 F.3d at 1154 ("§ 1681s-2 limits this private right of action to claims arising under subsection (b)").

Section 1681s-2(b) instructs furnishers what to do "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency."  Once put on notice of a dispute by a CRA, "the furnisher of the disputed information, has four duties: to conduct an 'investigation with respect to the disputed information;' to review all relevant information provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results 'to all [nationwide] consumer reporting agencies to which the person furnished the information.'"  *Nelson*, 282 F.3d at 1059 (quoting 15 U.S.C. § 1681s-2(b)).

These duties are not triggered unless a CRA informs the furnisher that the consumer has disputed the debt.  It is not enough for the consumer himself or herself to inform the furnisher of the dispute directly.  See *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D. Cal. 2005) ("The furnisher's duty to investigate, however, does not arise unless it receives notice of the dispute from the CRAs directly").  Grigoryan alleges that he advised the CRAs that he disputed the allegedly inaccurate late payment report regarding account #2 in October 2011.[46]  The CRAs purportedly began an investigation, which was completed by November 14, 2011.  During the investigation, BofA allegedly verified the inaccurate late payment to the CRAs.[47]  These allegations give rise to an inference that the CRAs gave notice of the dispute to BofA, triggering its duties under §1681s-2(b).

Citing *Marks v. Ocwen Loan Serv.*, No. 07-2133, 2009 WL 975792 (N.D. Cal. Apr. 10, 2009), and *Bradley v. Paypal, Inc.*, No. 08-03924, 2009 WL 1035245 (N.D. Cal. Apr. 17, 2009),

---

[46]FAC, ¶ 44.

[47]*Id.*, ¶ 48.

BofA contends that Grigoryan has not pleaded specific facts that establish a violation of the FCRA.[48]  BofA's reliance on *Marks* and *Bradley* is misplaced; in both cases, the plaintiff did not specify which section of the FCRA he or she asserted the defendant had violated.  In contrast, Grigoryan has specifically alleged that BofA violated § 1681s-2(b).[49]  Moreover, Grigoryan asserts that he received a letter from BofA following the CRA investigation in which BofA stated that it would not change any information it had reported and confirmed that it had "validated that all information being reported on the account is accurate."[50]  Grigoryan also alleges that on May 23, 2012, the inaccurate reporting was finally corrected by a supervisor employed in BofA's Credit Reporting Department, who confirmed that since the accounts were opened, each of his payments had been timely.[51]  These allegations sufficiently plead that BofA violated § 1681s-2(b) by failing to conduct an accurate investigation of Grigoryan's account, and by failing to correct the inaccurate account information in dispute.[52]  Consequently, BofA's motion to dismiss Grigoryan's second cause of action is denied.

### D.    Whether Plaintiff's Third Cause of Action States a Claim for Violation of the California Consumer Credit Reporting Agencies Act

BofA contends that Grigoryan's California Consumer Credit Reporting Agencies Act ("CCCRAA") claim should be dismissed because it is preempted by the FCRA.[53]  California Civil Code § 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  CAL. CIV. CODE § 1785.25(a).  Grigoryan alleges that

---

[48]Motion at 6.

[49]FAC, ¶ 70.

[50]*Id.*, ¶ 49; see also *id.*, Exh. S.

[51]*Id.*, ¶ 58; see also *id.*, Exh. X.

[52]*Id.*, ¶ 70.

[53]Opp. at 7.

BofA knowingly and willfully violated the CCCRAA by submitting and continuing to report incorrect credit information to the CRAs that it knew or should have known was inaccurate.[54]

## 1. The FCRA's Preemption Provisions

"[T]he FCRA contains two preemption sections restricting state law claims that apply to persons who furnish information under the FCRA." *Woods v. Protection One Alarm Monitoring, Inc.*, No. 1:06-CV-00398-SMS, 2007 WL 2391075, *7 (E.D. Cal. Aug. 22, 2007). "When first enacted in 1968, the FCRA had one section dealing with preemption of state law claims": 15 U.S.C. § 1681h(e). *Weseman v. Wells Fargo Home Mortg., Inc.*, No. CV 06-1338-ST, 2008 WL 542961, *2 (D. Or. Feb. 22, 2008). Section 1681h(e) provides:

> "Except as provided in section 1681n and 1681o of this title, no consumer may
> bring any action or proceeding in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information against any consumer
> reporting agency, any user of information, or any person who furnishes information
> to a consumer reporting agency, based on information disclosed pursuant to section
> 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user
> of a consumer report to or for a consumer against whom the user has taken adverse
> action based in whole or part on the report except as to false information furnished
> with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).

The provision "only preempts state claims for defamation, invasion of privacy and negligence and only to the extent such claims are based on the disclosure of certain types of information and are not based on malice or willful intent to injure." *Weseman*, 2008 WL 542961 at *2.

In 1996, Congress amended the FCRA to add another, more general preemption provision. See *Weseman*, 2008 WL 542961 at *2. Section 1681t(b)(1)(F) provides that

> "[n]o requirement or prohibition may be imposed under the laws of any State
> (1) with respect to any subject matter regulated under . . . section 1681s-2 of this
> title, relating to the responsibilities of persons who furnish information to consumer

---

[54]FAC, ¶ 73.

reporting agencies, except that this paragraph shall not apply – (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996)."[55]  15 U.S.C. § 1681t(b)(1)(F).

Courts have recognized that there is an apparent tension between these two preemption provisions.  The district court in *Weseman* noted that "[i]f § 1681t(b)(1)(F) is construed to preempt all state law causes of action against credit information furnishers, then § 1681h(e)[, which allows state law claims when plaintiff alleges malice or willful intent to injure,] is superfluous and effectively repealed."  *Weseman*, 2008 WL 542961 at *3.

"There is no Ninth Circuit authority attempting to reconcile the two apparently conflicting preemption statutes."  *Woods*, 2007 WL 2391075 at *7; see also *Weseman*, 2008 WL 542961 at *3 ("To date, neither the Ninth Circuit nor any other circuit court has addressed the scope of preemption under the FCRA").[56]  As a result, district courts have developed three different approaches to reconcile the provisions. These are the "total preemption" approach, the "statutory" approach, and the "temporal" approach.  See *Weseman*, 2008 WL 542961 at *3; *Woods*, 2007 WL 2391075 at *7-8.  The differences between the approaches are as follows:

"'Under the 'total preemption' approach, [§ 1681]t(b)(1)(F) does indeed preempt all state law claims against furnishers of credit information arising from conduct regulated by [§] 1681s-2, thus effectively repealing the earlier preemption provision, [§] 1681h(e).  Under the 'temporal' approach, preemption depends on whether the cause of action arises before or after a credit information furnisher has notice of a consumer dispute.  Finally, under the 'statutory' approach,

---

[55]"The two state statutes that are exempt from preemption by this section both involve the obligations of credit information furnishers to provide accurate information to credit reporting agencies."  *Weseman*, 2008 WL 542961 at *2.

[56]In 2009, the Ninth Circuit considered the interaction of the two provisions, calling it a "difficult issue of first impression."  *Gorman*, 574 F.3d at 1165, 1166.  Although the court noted that"[a]ttempting to reconcile the two sections ha[d] left district courts in disarray," it did not reach the issue, concluding instead that Gorman could not prevail on his libel claim even under § 1681h(e), because he could not demonstrate malice or willful intent.  *Id.* at 1167.

[§ 1681]t(b)(1)(F) preempts only state law claims against credit information furnishers brought under state statutes, just as [§] 1681h(e) preempts only state tort claims.'" *Weseman*, 2008 WL 542961 at *3 (quoting *Manno v. Am. Gen. Fin. Co.*, 439 F.Supp.2d 418, 424-25 (E.D. Pa. 2006)).

Courts in the Ninth Circuit have utilized both the "total preemption" and "statutory" approaches. The majority, however, has favored the "total preemption" approach, determining that § 1681t(b)(1)(F) totally preempts all "state statutory and common law causes of action which fall within the conduct proscribed under § 1681s-2." *Woods*, 2007 WL 2391075 at *9; see also *Weseman*, 2008 WL 542961 at *3 ("District courts in the Ninth Circuit have employed both the 'total preemption' and 'statutory' approaches, with the majority favoring the 'total preemption' approach"); *Schreiber v. Siemons*, 07-2467, 2007 WL 2344885, *3 n. 8 (N.D. Cal. Aug. 14, 2007) ("Although the Ninth Circuit has not yet ruled on this issue, 'the majority of district courts in the Ninth Circuit have held that the FCRA preempts state statutory and common law causes of action which fall within the conduct proscribed under § 1681s-2(a)," quoting *Pacheco v. Citibank*, 07-1276 , 2007 WL 1241934, *2 (N.D. Cal. Apr. 27, 2007)); *Roybal*, 405 F.Supp.2d at 1181 ("Because Plaintiffs' State Claims are based on alleged injury arising purely from the reporting of credit information by a furnisher of credit, they are completely preempted [by the FCRA]. Several courts that have analyzed this preemption clause concur" (citations and footnote omitted)); *Davis v. Maryland Bank*, No. 00-4191, 2002 WL 32713429, *13 (N.D. Cal. June 19, 2002) (holding that § 1681t(b)(1)(F) preempts all state claims falling within the coverage of § 1681s-2, including those involving malicious and willful tortious conduct).[57]

---

[57]But see *Weseman*, 2008 WL 542961 at *4 ("[T]his court is persuaded by the reasoning of the courts which adopt the 'statutory' approach. It is noteworthy that this is not the only court in which judges from the same district disagree on this issue"); *Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp.2d 1005, 1010 (N.D. Cal. 2005), rev'd in part, 370 F. Supp.2d 1005 (rejecting the total preemption approach because "it violates a canon of statutory construction by allowing a general statute to trump a specific statute"); *Woods*, 2007 WL 2391075 at *11 (holding that a libel action could be maintained under § 1681h(e) if malice could be proved); *Abouelhassan v. Chase Bank*, No. 07-3951, 2007 WL 3010421, *4 n. 7 (N.D. Cal. 2007) ("This Court agrees that § 1681t(b)(1)(F) should govern preemption of common law defamation and negligence claims, and

17

1    The court agrees with the majority's "total preemption" approach for the reasons set forth

2 in *Davis*. As the *Davis* court reasoned,

> "[t]he plain language of section 1681t(b)(1)(F) clearly eliminated all state causes
> of action against furnishers of information, not just ones that stem from statutes that
> relate specifically to credit reporting. To allow causes of action under state statutes
> that do not specifically refer to credit reporting, but to bar those that do, would defy
> the Congressional rationale for the elimination of state causes of action.'" *Davis*,
> 2002 WL 32713429 at *13 (quoting *Jaramillo v. Experian Information Solutions,
> Inc.*, 155 F.Supp.2d 356 (E.D. Pa. 2001)).

The *Davis* court also observed that

> "the legislative history demonstrates that Congress enacted section 1681t(b)(1)(F)
> in order to create a uniform scheme governing the disclosure of credit information.
> See *Kodrick v. Ferguson*, 54 F.Supp.2d 768, 794 (N.D. Ill. 1999) (discussing
> legislative history of FCRA's preemption provisions). Allowing common law tort
> claims which implicate the same subject matter as section 1681s-2(1) would
> undermine Congress' intention to create a uniform system of protection for
> consumers." *Id.; see also Roybal*, 405 F.Supp.2d at 1181.

The court finds this reasoning persuasive. As the *Davis* court noted, the plain language of § 1681t(b)(1)(F) clearly bars the imposition of *any* state law requirement or prohibition relating to the responsibilities of persons who furnish information to consumer reporting agencies; nothing in the provision limits its applicability to causes of action arising under state statute. The court observes, moreover, that Congress enacted the broader preemption provision set forth in § 1681t(b)(1)(F) after it passed § 1681h(e). Presumably it was aware of the latter provision when it passed a law that on its face eliminated all state causes of action relating to the subject matter of § 1681s-2. Congress could have expressly "saved" defamation, invasion of privacy, and negligence claims from preemption under § 1681t(b)(1)(F), by enacting exceptions for those

therefore rejects Chase's blanket preemption argument. . .").

18

1    claims as it did for claims arising under section 54A(a) of chapter 93 of the Massachusetts

2    Annotated Laws and California Civil Code § 1785.25(a).   It did not do so, however.

3    Accordingly, the court applies the "total preemption" approach to consider whether Grigoryan's

4    claims are preempted by the FCRA.

5                    **2.       Whether the Preemption Provisions Apply to Grigoryan's California**

6                             **Consumer Credit Reporting Agencies Act Claims**

7            Grigoryan has asserted claims against BofA under § 1785.25(a) of the CCCRAA.   Section

8    1681t(b)(1)(F) of the FCRA preempts all state statutory causes of action against furnishers of

9    information, except for those arising under two state statutes.   California Civil Code § 1785.25(a)

10   is one of the state statutes that the FCRA expressly saves from preemption.   See 15 U.S.C.

11   §1681t(b)(1)(F)(ii) ("No requirement or prohibition may be imposed under the laws of any State

12   with respect to any subject matter regulated under section 1681s-2 of this title . . . except that this

13   paragraph shall not apply . . . with respect to section 1785.25(a) of the California Civil Code[.]").

14          While § 1785.25(a) is exempted from FCRA preemption, §§ 1785.25(g) and 1785.31 – the

15   provisions that create a private right of action to enforce § 1785.25(a) – are preempted by the

16   FCRA.   This is true under both the "total preemption" and "statutory" approaches to interpreting

17   § 1681t(b)(1)(F).   As the court explained in *Gorman*:

18           "When Congress enacted the FCRA, it expressly saved California Civil Code

19           1785.25(a) from preemption by carving out an exception for that subsection in the

20           preemption provision, but it did not similarly save § 1785.25(g) or § 1785.31.

21           Although § 1785.25(a) of the California Civil Code is not preempted and, therefore,

22           MBNA can be held liable if it violated that statute, the proper parties to pursue such

23           liability are Federal and State officials.   The FCRA did not except from preemption

24           § 1785.25(g) or § 1785.31, and thus those sections are preempted by 15 U.S.C. §

25           1681t(b)(1)(F).   Without the benefit of those sections, Gorman has no private right

26           of action to bring suit for a violation of § 1785.25(a)" (citations omitted).   370

27           F.Supp.2d at 1011.

28   Consequently, Grigoryan's CCCRAA claims are barred.   See *id.*; *Lin v. Universal Card Serv.*

                                                         19

1    *Corp.*, 238 F.Supp.2d 1147, 1152 (N.D. Cal. 2002) ("Only § 1785.25(a) of the CCRAA, which

2    does not provide for a private right of action, is excluded from preemption"); *Quigley v. Penn.*

3    *Higher Educ. Assistance Agency*, No. C00–1661CRB, 2000 WL 1721069, *3 (N.D. Cal. Nov.

4    8, 2000) ("[B]ased on a plain reading of the FCRA, any private right of action under the

5    California Civil Code based on the wrongful acts of a 'furnisher of information' is preempted by

6    the FCRA").

7         **E.    Whether Plaintiff's Fourth Cause of Action States a Claim for Violation of**

8              **California Business & Professions Code § 17200**

9         Grigoryan's fourth cause of action alleges violation of California's Unfair Competition Law

10   ("UCL"), California Business & Professions Code § 17200 et seq.   "The UCL prohibits 'any

11   unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

12   advertising.'"   *Stearns v. Select Comfort Retail Corp.*, Case No. 08–2746 JF (PVT), 2010 WL

13   2898284, *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. & PROF. CODE § 17200); *Berryman*

14   *v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007).   The law is "sweeping,

15   embracing anything that can properly be called a business practice and at the same time is

16   forbidden by law."   *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163,

17   180 (1999).

18        In its reply, BofA contends that Grigoryan's UCL claim is preempted by the FCRA.   The

19   court agrees.   For the reasons noted, the court follows the "total preemption" approach to

20   interpreting the FCRA adopted by a majority of federal courts.   Applying this approach, it is clear

21   that Grigoryan's UCL claim is preempted by the FCRA.   See *Howard v. Blue Ridge Bank*, 371

22   F.Supp.2d 1139, 1143-44 (N.D. Cal. 2005) (dismissing plaintiff's UCL claim on the grounds that

23   Congress intended the FCRA to be the sole remedy against furnishers); see also *Jaramillo*, 155

24   F.Supp.2d at 361-62 ("[I]t is clear from the face of section 1681t(b) that Congress wanted to

25   eliminate all state causes of action relating to the responsibilities of persons who furnish

26   information to consumer reporting agencies.   Any other interpretation would fly in the face of the

27   plaint meaning of the statute").   Consequently, Grigoryan's fourth cause of action is dismissed

28   with prejudice.

**F.      Whether Plaintiff's Defamation Claim is Preempted as a Matter of Law**

Grigoryan alleges that BofA "slandered" his credit by its "continuous and repeated false reporting of . . . frequent delinquencies on his accounts, which defamed his name as an irresponsible consumer and borrower."[58]  BofA argues that Grigoryan's defamation claim must be dismissed because it is barred by the preemption provisions of the FCRA.[59]

For the reasons discussed above, the court has adopted the "total preemption" approach to interpretation of the FCRA.  Section 1681t(b)(1)(F) of the FCRA preempts all state statutory and common law causes of action against furnishers of information, except those arising under two state statutes.  Because Grigoryan's defamation claim is a state common law cause of action, it is preempted by § 1681.  See *Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F.Supp.2d 1207, 1215 (E.D. Cal. 2008) (applying "total preemption" approach to find defamation claim preempted by FCRA).  Consequently, plaintiff's fifth cause of action is dismissed with prejudice.

**G.      Whether Plaintiff Is Entitled To Injunctive Relief**

BofA moves to dismiss Grigoryan's request for injunctive relief.  It contends that the request fails because injunctive relief is not an available remedy under the FCRA or CCCRAA.[60]  Grigoryan asserts that he is entitled to injunctive relief because § 1681s-2(b) of the FCRA provides a private right of action.[61]  In his complaint, however, Grigoryan requests injunctive relief only under California Civil Code § 1785.31, not under the FCRA.  His cause of action under §1785.31 is preempted by the FCRA, so he is not entitled to injunctive relief under the California Civil Code.[62]

---

[58]FAC ¶ 79.

[59]Mot. at 12-13.

[60]*Id*. at 13.

[61]Opp. at 15-16.

[62]Even if Grigoryan had requested injunctive relief under the FCRA, it is far from clear that he would be entitled to it.  The liability provisions of the FCRA, sections 1681n and 1681o,

### H.      Whether Plaintiff Is Entitled to Punitive Damages

BofA also moves to dismiss Grigoryan's claim for punitive damages. Grigoryan seeks punitive damages under section 1681n of the FCRA and California Civil Code § 1785.31(b). Because his state law claims are preempted by the FCRA, the court need not consider his request for punitive damages under Civil Code § 1785.31. Rather, the possible basis on which he is entitled to punitive damages flows from the FCRA.[63]

Section 1681n of the FCRA states that any person who willfully fails to comply with the statute as respects any consumer is liable to that consumer for actual damages, punitive damages,

---

set forth the remedies available to private litigants. These statutes provide for an award of damages and attorneys' fees, but do not mention injunctive relief. See 15 U.S.C. § 1681n; *id.*, § 1681o. "Elsewhere in the FCRA, injunctive relief is mentioned and available only to the FTC or other agencies enforcing the FCRA." *Howard*, 371 F.Supp.2d at 1145. Section 1681u, which affords consumers a damages remedy against the government also specifically provides for injunctive relief. *Id.* As a result, the Fifth Circuit concluded that no injunctive relief was available under §§ 1681n and 1681o, reasoning that "where Congress intended to allow private injunctive relief under the FCRA, it expressly stated that this relief was available." *Washington v. CSC Credit Serv., Inc.* 199 F.3d 263, 268 (5th Cir. 2000). Although the Ninth Circuit has not opined on the matter, most district courts have agreed with the Fifth Circuit's conclusion. See, e.g., *Howard*, 371 F.Supp.2d at 1145 ("The Court considers the express inclusion of injunctive relief in certain provisions of the FCRA and its omission from the provisions creating plaintiff's cause of action to be a sufficiently "clear command" from Congress that injunctive relief is not available to plaintiff"); *Ramirez v. MGM Mirage, Inc.*, 524 F.Supp.2d 1226, 1237 (D. Nev. 2007); *Yeagley v. Wells Fargo & Co.*, No. C 05-03403 CRB, 2006 WL 193257, *3 (N.D. Cal. Jan. 23, 2006) ("The language and structure of the FCRA compel the conclusion that a private litigant may not maintain an action for injunctive relief or declaratory relief under the FCRA"). But see *Andrews v. Trans Union Corp.*, 7 F.Supp.2d 1056, 1084 (C.D. Cal. 1998) ("The FCRA contains no 'clear command' that injunctive relief is unavailable; therefore, it is available").

[63]While Grigoryan does not claim punitive damages under RESPA, the court notes that he may not, in any future amended complaint, recover punitive damages under RESPA. RESPA affords plaintiffs a right only to compensatory relief, reasonable attorneys' fees, and additional damages as the court may allow, not to exceed $1,000. 12 U.S.C. § 2605(f). See *Catalfamo v. Countrywide Home Loan*, No. CV F 08-1117 LJO TAG, 2008 WL 4158432, *5 (E.D. Cal. Sept. 4, 2008) (striking plaintiff's prayer for punitive damages because such damages are not a form of recovery available under RESPA).

1   and attorneys' fees.[64]   15 U.S.C. § 1681n(a).   Grigoryan alleges that BofA willfully failed to

2   comply with the FCRA.[65]   He has alleged, specifically, that BofA intentionally delayed

3   investigation and correction of his account until May 2012, despite receiving notice from the credit

4   bureaus (and from Grigoryan himself) that he disputed the late payment claim in  November

5   2011.[66]   Consequently, BofA's motion to dismiss Grigoryan's prayer for punitive damages must

6   be denied.[67]

7       **I.     Whether Plaintiff Is Entitled to Attorneys' Fees**

8           Finally, BofA moves to dismiss Grigoryan's prayer for attorneys' fees.   Under California

9   law, a party cannot recover attorneys' fees unless such recovery is authorized by contract or

10  statute.   Grigoryan seeks attorneys' fees under RESPA, the FCRA, and California Code of Civil

11  Procedure § 490.020.[68]   BofA contends that Grigoryan's attorneys' fees prayer must be dismissed

12  because he has not established any violation of RESPA and does not have a private right of action

13

14  _____

15      [64]See *id.*, § 1681n ("Any person who willfully fails to comply with any requirement
16  imposed under this subchapter with respect to any consumer is liable to that consumer in an
    amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the
17  failure or damages of not less than $100 and not more than $1,000; . . . such amount of punitive
18  damages as the court may allow; and in the case of any successful action to enforce any liability
    under this section, the costs of the action together with reasonable attorney's fees as determined
19  by the court").   In *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court
    held that "willful" violations can be either knowing or reckless.   *Id.* at 2208.   It defined reckless
20  violations objectively as "action entailing an unjustifiably high risk of harm that is either known
    or so obvious that it should be known."   *Id.* at 2215.

21
        [65]FAC, ¶ 70.
22

23      [66]*Id.*, ¶¶ 48, 58.

24      [67]BofA also asserts that Grigoryan's request for punitive damages fails because he has not
    adequately alleged the prerequisites to the recovery of punitive damages from a corporation
25  (Motion at 15).   BofA relies on California authority.   While this authority might be relevant to the
    extent Grigoryan has a right to seek punitive damages on state law causes of action, his state law
26  causes of action have been dismissed with prejudice.   As a result, BofA's argument is unavailing.

27
        [68]FAC, ¶ 25.
28

1  under the FCRA.[69]  Because the court has concluded that Grigoryan sufficiently pled RESPA and

2  FCRA causes of action, it will consider whether he may seek attorneys fees under either statute.

3      Section 2605(f) of RESPA outlines the remedies available to a plaintiff seeking to enforce

4  the terms of that legislation against the servicer of his loan.  It states, in pertinent part: "Whoever

5  fails to comply with any provision of this section shall be liable to the borrower . . . [for] the costs

6  of the action, together with any attorneys fees incurred in connection with such sanction as the

7  court may determine to be reasonable under the circumstances."  12 U.S.C. § 2605(f)(3).  Under

8  this provision, Grigoryan may be entitled to attorneys' fees if he prevails on his RESPA cause of

9  action.

10     Section 1681n of the FCRA provides: "Any person who willfully fails to comply with any

11 requirement imposed under [the Act] with respect to any consumer is liable to that consumer in

12 an amount equal to the sum of . . . the costs of the action together with reasonable attorney's fees

13 as determined by this court."  15 U.S.C. § 1681n(a)(3).  Grigoryan's complaint alleges that BofA

14 willfully failed to comply with the FCRA.[70]

15     Because Grigoryan may be entitled to attorney's fees under either RESPA, the FCRA, or

16 both, BofA's motion to dismiss his prayer for attorneys' fees is therefore denied.[71]

17

18                              **III.  CONCLUSION**

19     For the reasons stated, the court denies BofA's motion to dismiss Grigoryan's first and

20 second causes of action.  The court grants BofA's motion to dismiss Grigoryan's third, fourth,

21 and fifth causes of action.  Because these claims are preempted by the FCRA, the court dismisses

22

23     [69]Motion at 15.

24     [70]FAC ¶ 70.

25     [71]BofA also contends that Grigoryan has erroneously cited California Code of Civil

26 Procedure § 490.020 as a basis for recovering attorneys' fees.  According to BofA, this section
   deals solely with wrongful attachments on property, and thus has no applicability to this case.  The

27 court agrees.  Grigoryan does not bring any cause of action claiming that BofA committed

28 wrongful attachment, so he can not seek fees under § 490.020.

them with prejudice.  As respects Grigoryan's prayers for relief, the court grants defendant's motion to dismiss his prayer for injunctive relief.  It denies BofA's motion to dismiss plaintiff's prayers for punitive damages and attorneys' fees.


DATED: December 31, 2012

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE